By the Court—Robertson, J.
The plaintiff’s right to recover depends upon the act of Congress of July, 1850, (9 U. S. Stat. at Large, p. 440,) if that be a constitutional enactment. It requires bills of sale and conveyances to he recorded in a Collector’s office in order to be notice to *168 any one save grantors and mortgagors and their representatives, and persons having actual notice of them. It is contended on behalf of the plaintiff that information sufficient to put parties upon inquiry is actual notice, within the meaning of the statute; that mere want of notice could not alter the ownership of the vessel, but only served to protect honest trespassers from anything more than mere actual damages, and merely took away the rights of a vendee claiming under an unrecorded bill of sale, and not those of tona fide purchasers from him.
The plaintiffs had an ample opportunity to give actual notice to both defendants of their interest and the instrument under which they claimed, before any sale by the latter; the responsibility of keeping them in the dark rests upon the plaintiffs ; the prejudice, therefore, if any, is of their own seeking. There is no great hardship in compelling a vendee under an unrecorded bill of sale, to give full notice to a party seizing the vessel by legal process, while much harm is done to the creditor of the vendor by concealing such bill until the trial. The language of the statute is very comprehensive, it makes a sale by an unrecorded instrument void as against parties not actually notified. I do not see how that can be confined to a restriction of damages, or to the vendee; it includes the whole world save the excepted class.
The question still remains as to the meaning of the word “ actual.” The evidence approaches very nearly, if ■ not quite, to proof of information sufficient to put the defendants upon inquiry; The plaintiffs were in actual possession of the vessel which forms the subject of controversy; the defendant Jacot, was 'informed that the plaintiffs’ agent had notified his attorney and an officer, who were prepared to seize her in another port under an attachment, that she had been enrolled in a different port, and the vendor and debtor had not owned her for a longtime. But the use of the word “ actual ” in the statute renders such evidence unavailing. This statute is probably a copy of a law of the State of Massachusetts in relation *169 to the registry of instruments affecting real estate; for it contains the words “ heirs and devisees ” who are not the successors to the title of personal property. (Mass. R. S., ch. 59, § 28.) Before the last revision of her laws, the word “ actual ” was not in such act, but was introduced in such revision and has been since held to exclude all constructive notice. (Pomeroy v. Stevens, 11 Metc., 244 ; Flagg v. Mann, 2 Sumn. R., 486, 554, 555.) A similar doctrine was held in Maine even when the word “ actual ” was not in the statute. (Hewes v. Wiswell, 8 Greenl., 94.)
Even in regard to constructive notice, considerable modifications have been lately made of the doctrine. In Goodman v. Simonds, (20 How. U. S. R., 343), notice was held to mean knowledge, as one of its usual and appropriate significations. In Hewitt v. Loosemore, (9 Eng. L. and Eq., 35,) constructive notice was defined to be “ know- “ ledge imputed by the Court upon presumptions too strong “to be rebutted, that such knowledge must have been “ communicated.” These decisions go far to approximating the two kinds of notice, and in a statute, according to its subject, the approximation may be very close. In Dey v. Dunham, (2 J. C., 182 ; S. C. on app., 15 J. R., 555,) it was held that a notice to break in on the registry acts must be such as will affect the subsequent purchasers with fraud; it is not enough if only sufficient to put him upon inquiry. Implied notice was held not to be sufficient in Jackson v. Given, (8 J. R., 137 :) The doctrine laid down in Dey v. Dunham, is reiterated in Jackson v. Van Valkenburgh, (8 Cow., 260 :) And Jackson v. Elston, (12 J. R., 452,) declares that explicit notice of the prior unregistered deed must be given. The language of all the cases in regard to notice under registry acts, seems to be even stronger than those in case of negotiable instruments diverted from the object for which they were made. Even without the word “ actual ” in the statute, I think the notice in this case was not sufficient, with it, there clearly was not notice.
Although I find difficulty in ascertaining any principle upon which the Federal Congress has power to legislate *170 upon the transfer of vessels, not equally applicable to the sale of any other species of property, either subjects or instruments of commerce, or even to every act in the course of commerce, every mercantile dealing, including prevention of frauds and effects of policies of insurance; and although such power does not come within that of regulating' the national character of vessels, nor is it in aid of revenue laws or a regulation of commerce under section 3 of section 8, article 3 of the Constitution of the United States, I am loth to pass upon the question of the constitutionality of the law under consideration ; and leave it to the highest court in this- State or the Federal Courts to pass upon it: being content with noticing it: particularly as the counsel did not discuss it on the argument.
These views render my examination of other points in the case unnecessary. The order should, therefore, be affirmed, with costs.
Hoffman, J.,
delivered an opinion, which after discussing questions other than that of notice, proceeds as follows, viz.:
We come, therefore, as to both defendants, and in every aspect, as to the defendant Willett, to the consideration of the question mainly argued and relied upon by the defendants, viz., the effect of the act of Congress of July 29,1850, upon the case. (U. S. Stat. at Large, vol. 9, p. 440.)
This point was not explicitly and in terms taken upon the trial. It is supposed to have been included in the point that neither defendant had notice of the assignment or bill of sale. Both counsel advert to the statute in their points; the plaintiffs seeking to avoid its effect. Much of the argument on the appeal turned upon it.
It seems to have been conceded and assumed that no registry, under the act in question, of the assignment or bill of sale, had ever been made.
The act in question provides, “That no bill of sale, mortgage, hypothecation or conveyance of any vessel, or part of any vessel, of the United States shall be valid *171 against any person, (other than the grantor or mortgagor, his heirs and devisees, and persons having actual notice thereof,) unless such bill of sale, mortgage, hypothecatiou or conveyance be recorded in the office of the collector of the customs where such vessel is registered or enrolled.’’ Other sections provide for the mode of recording’, giving certificates, &c.
■ My brother Bobertsoe has expressed some doubt as to the constitutionality of this act, whether it can justly come within the power of regulating the national character of vessels, under the power to regulate commerce.
Professor Parsons, in his Elements of Mercantile Law, (pp. 329, 330 and note) has intimated similar doubts. He adverts to the case of recording, required by State laws, of mortgages of personal property, and he observes: “If we suppose the statute to be constitutional, of which however we do not feel certain, we should say that it controlled and superseded the State statute, so as to make that unnecessary and ineffectual; and therefore a record in the custom houseonlywouldbesufficient.” In Thompsons v. Van Vechten, (at Special Term in June, 1857 ; see 6 Bosw., 373,) I had this act under consideration, and observed that, prior to this statute, the registry or enrollment established merely the national character of the vessel. It was not necessary, to make the title valid, that a bill of sale should be enrolled or registered. (Hozey v. Buchanan, 16 Pet., 215 ; Wendover v. Hogeboom, 7 John. R., 308 ; Weston v. Penniman, 1 Mason, 306.)
Hicks v. Williams, (17 Barb. R., 523,) was referred to, where it was held that a canal boat was not a vessel of the United States, within the act. Ho question as to the legality of thé act was raised. •
Thomas v. The Steamboat Kosciusko, was also noticed. (11 Leg. Obs., 38.) Betts, J., held, that in that Court (District Court of the United States,) at least, the act of Congress must prevail, whatever might be the question as to the subsistence of the State acts. That question did not arise.
I added “ In my opinion, this act of Congress prescribes a *172 rule as to all vessels of the United States as fully obligatory upon the State tribunals, as upon those of the United States; that it does not supersede or abolish statutory regulations of the State upon the subject, which are not inconsistent with it. It imposes another condition as to the validity of a mortgage as to these particular vessels. Hence if a mortgage of such a vessel is not registered at the custom house, it will be invalid as to purchasers or mortgagees without actual notice, although the State law may have been fully complied with. If it be registered at the custom house, and a State statute has been neglected, it will give place to a subsequent transfer also registered, and as to which the State law has been fulfilled. And so in case of successive mortgages, all registered, and all made in accordance with the law of the State, the priorities will be settled by the dates. I do not see any serious difficulty in thus holding the legislation of the State and Congress to be concurrently in force.”
Mr. Parsons refers to the case of Fontaine v. Beers, (19 Ala., 722.) In that case it was held, that the statutes of the State requiring the registration of mortgages did not apply to vessels navigating the ocean. The evidence of title to such was to be looked for in the ship’s papers, and the recording under the act of Congress.
In Potter v. Irish, (21 Monthly Law Reporter, 103,) the claim of an attaching creditor under the Massachusetts law was held good against the mortgagee of a vessel, whose mortgage was not recorded at the Custom House at which she was registered, though recorded elsewhere.
I have not met any authority in the reports of the Supreme Court of the United States, upon the act, except that of Hays v. The Pacific Mail Steamship Company, (17 How. U. S. R., 597,) in which it was referred to in connection with the registering act of 1792. “These provisions,” say the Court, “and others might be referred to, very clearly indicate that the domicile, or home port, of a vessel that requires to be registered, is the port at which she is *173 registered, and which must be the nearest to the place at which the owner or owners reside.”
The home port of the vessel in question was New York, and it was held she was not liable to taxation by the State of California. She was not properly within its limits, so as to become incorporated with the other personal property of the State. She was temporarily engaged in lawful trade and commerce, with her situs at the home port where she belonged, and where the owners were liable to be taxed upon their capital.
The constitutional power to regulate commerce has authorized Congress to adopt the system of registration and enrollment of vessels, by means of which a national character is given to them, and a compliance with which is indispensable for the obtaining that character and the advantages which arise from it. I do not see why it is not equally constitutional to impose a condition on the mode of transfer of such national vessels, to keep the evidence of the title to them recorded and open.
Lord Teetebden says that the great, and, perhaps, the only original object of the British statutes, was, to advance the policy of the State by the notoriety of property, obtained through the medium of a public register, a measure adopted, with numerous improvements, from the wisdom of former times. The privileges belonging to a national vessel are to be preserved and continued in the manner pointed out by the statute.
The power to regulate commerce embraces within its scope the power to regulate navigation. (Gibbons v. Ogden, 9 Wheat., 1 ; City of New York v. Miln, 11 Peters, 102 ; and Veazie v. Moor, 14 How. U. S. R., 568.)
In The People v. Brooks, (4 Denio, 469,) Justice Beardsley says: “The word commerce, as used in the Constitution, is not limited to the mere buying and selling of merchandise, and other commodities, but comprehends the entire commercial intercourse with foreign nations, and among the several States. It includes navigation, as well as traffic, in its ordinary signification, and embraces *174 ships and vessels as the instruments of intercourse and trade.”
In The United States v. Coombs, (12 Peters, 72,) it was decided that, under, this provision of the Constitution, an act of Congress subjecting to indictment all plunderers of the property of wrecked vessels, or their passengers, extended to a pillage committed above high water mark. The Court held that it had not jurisdiction under the other clause as to admiralty jurisdiction.
But upon the point of the notice or information acquired by Jacot, not being such as prescribed by the statute, I concur with Justice Bobebtsoh’s result. The statute only remedies the want of registry as to those who have actual notice of the bill of sale, mortgage, &c. The acts of our State as to recording deeds and mortgages provide, that, if not recorded, they shall be void as to subsequent purchasers or mortgagees, in good faith, and for valuable consideration. This language lets in the doctrine of notice; and it is settled that implied or presumptive notice may be equivalent to actual notice. (Kent’s Com., vol. 4, p. 171., &c.) It is not necessary to enter upon the cases and their distinctions upon this doctrine. (1 R. S., 756, § 1. As to mortgages of chattels, 2 R. S., 136, 3d ed. ; act of 1833, ch. 297, § 1.)
The statute of fraudulent conveyances relative' to lands, (2 R. S., 134, § 1,) is, that conveyances or charges on land, made to defraud proven subsequent purchasers for a valuable consideration, shall be void. And the second section is, that no such conveyance or charge upon lands shall be deemed fraudulent in favor of a subsequent purchaser who shall have actual or legal notice thereof at the time of his purchase, unless the grantee was privy to the fraud intended.
This statute changes the rule of law under the 27th of Elizabeth, by which even a mere voluntary conveyance, fraudulent only by construction of the law, could be set aside by a subsequent purchaser, although he had notice of it. (Roberts on Convey., 35 ; White v. Hussey, Prec. in *175 Ch., 13 ; Doe v. Manning, 9 East., 59 ; 18 Ves., 90, 110 ; Sterry v. Arden, 1 John. Ch. R., 261 ; Newman v. Rusham, 9 Eng. Law and Eq. R., 410.)
Chancellor Kent, in Sterry v. Arden, adverts to the doubts expressed whether the better construction of the statute would not have been to support the voluntary conveyance against purchasers for a valuable consideration with notice, (and to that opinion he strongly inclined,) but that it was pretty evident the allusion there was only to cases of actual notice, where the purchaser was intentionally and premeditatingly defeating the fair claims and expectations of the prior grantee. (9 East., 71 ; 6 Bos. & Pull., 335 ; 1 Fonbl., 269, n. 9 ; Atherly on Marriage Settlements, 197, n. 1 ; Sterry v. Arden, in the Court of Errors, 12 John., 536, Revisers’ Notes, vol. 3, p. 654.)
The phraseology of the statute above cited is, “ actual or legal notice.” In Williamson v. Brown, (15 N. Y. R., 354,) the different kinds of notice were much discussed. It was a case of an unrecorded mortgage and a subsequent grant. Mr. Justice Paige speaks of the question as being whether the plaintiff, (the grantee,) was to be deemed to have had, at the time of his purchase, legal notice of the prior unrecorded mortgage. It is manifest that he uses the term as equivalent to implied or constructive notice. Mr. Justice Selben has given a description of notices, perhaps more complete and accurate than any to be found elsewhere. “Notice is of two kinds; actual and constructive. Actual notice embraces all degrees and grades of evidence, from the most direct and positive proof to the slightest circumstance from which a jury would be warranted in finding notice. It is a mere question of fact, and is open to every species of legitimate evidence, which may tend to strengthen or impair the conclusion. Constructive notice is a leg’al inference from established facts. A recorded deed is an instance of constructive notice. Actual notice of it or not is of no consequence. Notice to an agent is constructive notice to the principal; and it would not, in the least, avail that the agent had not communicated the fact. *176 The law imputes notice, whether he has it or not. Legal or implied notice, therefore, is the same as constructive notice, and cannot be controverted by proof'.”
The question of notice of the prior mortgage in the case was then treated as a question of fact, upon the facts found by a referee, who had stated that the plaintiff had not actual notice of the mortgage at the time of his purchase, but had sufficient information to put him upon inquiry; that he pursued such inquiry to the extent of his information and belief, and did not find that such mortgage existed, or had been given. A judgment for the defendant, on the ground that the plaintiff was chargeable with notice of the mortgage, was reversed by the Court of Appeals.
It is, then, I apprehend, too strong a proposition to say that actual notice implies, and can only be satisfied by absolute proof of a direct personal communication of the fact or instrument in question. But in deciding what short of that will suffice, we are to bear in mind the strong leaning of the later English cases, and of the Supreme Court of the United States, especialty in commercial matters, to require much more to displace the right of an honest third party, on the ground of notice, than was before deemed requisite. In the case of The Belmont Branch of the State of Ohio v. Hoge, at the present General Term, (7 Bosw., 543,) I have examined and stated these authorities ; and the language of the learned Judges in Williamson v. Brown, (ut supra) is to the same effect.
It may be stated, then, as a just conclusion from these authorities, and the general principles they involve, that the evidence must be, such as to leave no room for doubt, that the party had information communicated to him of the existence of the bill of sale, mortgage or conveyance. The proof must be of a communication to him individually, and of the document; and if sufficient, it will establish knowledge. What is not required is, rigid proof of the exhibition of the instrument itself to the party personally.
How by the test of such rules, the evidence here is very defective and insufficient. There is no proof that the *177 attorney or the Deputy Sheriff themselves, saw either transfer. On the contrary, it rather is to be inferred that they saw only the enrollment, and heard only that Sprague was not the owner. Knowles, the attorney, states he has no doubt he communicated to Jacot all he himself knew. I do not think that this would have sufficed had he really seen the transfers. Clearly it is now insufficient. The communication by Delavan to the defendant, related to another vessel, and the statement that Sprague had made a general assignment, was also much too vague to charge defendant with notice under the rules I have deduced.
I had some doubt whether the question as a matter of fact, ought not to have gone to the jury ; but I am clear that had they found for the plaintiff on this proof, the court ought to have set their verdict aside; and in such a case a nonsuit must be supported.
The order should be affirmed, with costs.
Bosworth, Ch. J.
The evidence was insufficient to charge Jacot; and as to him the complaint was properly dismissed, unless it be essential, to uphold the decision, that it was rightly granted on the grounds on which it was asked. Had it been moved on the ground that there was no evidence of the levy being ordered or requested by Jacot, that defect might have been supplied. But if granted because there was no proof satisfying the conditions of the act of Congress in question, the case could not have been sustained by proof of Jacot’s participation in the levy.
Assuming the act of Congress of July 29, 1850, to be constitutional, its effect is to make every .transfer of a vessel of no force or effect as against creditors or vendors not having actual notice of it, unless it be recorded as that act requires, although it be in the possession of a purchaser in good faith, who has paid full value at the time it is seized on process at the suit of such creditor. Such I think is the necessary import of the statute. • If so, then this action cannot be sustained on the evidence given, as *178 neither the defendant Jacot nor the Sheriff is proved to have had actual notice of the assignment of it; and the evidence given does not warrant the jury in finding actual notice. Hot seeing clearly that such an act is void, I concur in affirming the order.
Order affirmed.