THE WILLIAM J. DAILEY. THE DR. GEORGE J. MOSER. MERRITT & CHAPMAN DERRICK & WRECKING CO. v. DAILEY TOWING LINE, Inc.

(Circuit Court of Appeals, Second Circuit. January 14, 1920.)

No. 51.

TOWAGE ⟨&⟩12(1)—TUG HELD NOT LIABLE FOR INJURY TO TOW.

Tugs towing a derrick having an A-frame extending upward *held* not liable for damage caused by the frame striking a bridge, where before passing under the bridge, in response to a question by the master of the leading tug, the master of the derrick stated the height of the frame, and if the statement had been correct there would have been a clearance of 2½ feet.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Merritt & Chapman Derrick & Wrecking Company against the tugs William J. Dailey and Dr. George J. Moser; the Dailey Towing Line, Incorporated, claimant. Decree for claimant, and libelant appeals. Affirmed.

Duncan & Mount, of New York City (S. C. Fordham and O. D. Duncan, both of New York City, of counsel), for appellant.

Alexander & Ash, of New York City (P. Alexander, of New York City, of counsel), for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

WARD, Circuit Judge. July 26, 1916, at about 9:30 a. m., the tugs William J. Dailey and Dr. George M. Moser took the derrick Monarch in tow from 102d street to Sherman creek, Harlem River. The tug Dailey was ahead towing, and the tug Moser was astern of the derrick, for the purpose of keeping her on a straight and steady course. The Monarch had a permanent A-frame near the stern, to the foot of which was attached a movable boom, which, when raised perpendicularly, was higher than the A-frame, but which had been lowered, so as to be even with it. Before reaching High Bridge the master of the Dailey had inquiry made of the master of the Monarch as to the height of the derrick, and was told 98 feet. Judge L. Hand has found as a fact that this question and answer related to the height of the A-frame from the water, and not from the deck. In accordance with our usual practice we adopt this finding. When the tow reached High Bridge, about 11 a. m., the A-frame at a point very near its top struck the exact center of the arch, sustaining damage, to recover which this libel was filed against both tugs.

It is admitted that the center of the arch is 100 feet above mean high water; that on the day of the accident high water occurred at 9 a. m., with a height of 4 feet above mean low water; and that at the time of the accident the tide had fallen 6 inches. This would have given a clearance of 2 feet 6 inches, quite ample for safe passage, if the top of the A-frame were 98 feet from the water. In point of fact

⟨&⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

it was 100 feet 8¾ inches, and the center of the arch only 100 feet 6 inches, above the water. Hence the collision.

We think the master of the tug was not guilty of the lack of ordinary care and skill required of him in relying upon the height of the derrick given him by her master. This misinformation was the proximate cause of the accident.

The appellant urges that, even admitting the foregoing, the tug Dailey was at fault for not having a lookout who might have advised the master of the danger before the derrick reached the bridge. We are satisfied that a lookout on the tug, looking up 100 feet in the air, when, if he were forward, there must have been at least 200 feet, and, if he were aft, say from 100 to 120 feet, between the arch and the top of the A-frame, could not possibly have told whether or not the frame was going to strike. The absence of a lookout did not contribute to the collision.

Finally, the appellant relies upon the decision of Judge Addison Brown in MacMillan v. Moran (D. C.) 107 Fed. 149. We think it differs in material respects. Findings, especially in negligence cases, depend upon the circumstances of each case. In it the master of the bark objected to being towed under the Brooklyn Bridge at high water, but the master of the tug for his own convenience departed from the common practice not to do so; he also miscalculated the fall of the tide to the extent of from 15 to 18 inches; he did not take into consideration the fact that the bridge dropped in warm weather as the result of the expansion of its steel wire cables; and, finally, he did not pass under the center of the bridge.

The decree is affirmed.