SOUTHERN BELL TELEPHONE & TELE-
GRAPH CO. v. BURKE.

No. 6551.

Circuit Court of Appeals, Fifth Circuit.
Jan. 24, 1933.

Palmer Pillans, of Mobile, Ala., Hugh Mallory, of Selma, Ala., and E. D. Smith, of Atlanta, Ga., for appellant.

Harry H. Smith, of Mobile, Ala., and E. W. Pettus, of Selma, Ala., for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

The appellee, alleging that he was the owner of the steamer Helen Burke, filed a libel in admiralty claiming damages for injury to that steamer resulting from its smokestack, while the steamer was passing upstream through the draw span of the highway bridge over the Alabama river at Selma, Ala., coming into contact with lines of the appellant strung from one bank of the river to the other, and passing diagonally over the bridge. The libel attributed the alleged injuries to negligence of the appellant in allowing or permitting said wires to be and remain too low for boats of the kind and size of said steamer to pass safely beneath them. The decree in favor of the appellee was challenged on the grounds: (1) That the claim asserted is not one within the admiralty jurisdiction; (2) that appellee was precluded from maintaining the claim by reason of his

stating under oath, to secure enrollment and license of the vessel, that the sole owner of it was a named corporation; (3) that the appellant was not chargeable with the fault or negligence alleged; and (4) that the proximate cause of the injury was negligence of appellee's servants and agents in charge of the management, operation, control, and navigation of said steamer.

The wrong and the injuries complained of having been wholly consummated while the steamer was traveling in the navigable waters of the United States, the claim based thereon is within the admiralty jurisdiction. Atlee v. Packet Co., 21 Wall. 389, 22 L. Ed. 619; Philadelphia, Wilmington & Baltimore R. R. Co. v. Philadelphia & Havre de Grace Steam Towboat Co., 23 How. 209, 16 L. Ed. 433; Panama Railroad v. Napier Shipping Co., 166 U. S. 280, 17 S. Ct. 572, 41 L. Ed. 1004; Cleveland, Terminal & V. Railroad Co. v. Steamship Co., 208 U. S. 316, 28 S. Ct. 414, 52 L. Ed. 508, 13 Ann. Cas. 1215. We are of opinion that there is no merit in the suggestion to the effect that the asserted claim was kept from being cognizable in admiralty by the circumstance that the thing with which the steamer collided was connected solely with upland beyond the shore or border of the river, no part of it being in or covered by navigable waters. Gonsalves v. Morse Dry Dock Co., 266 U. S. 171, 45 S. Ct. 39, 69 L. Ed. 228; F. S. Royster Guano Co. v. Outten (C. C. A.) 266 F. 484.

Formerly the steamer Helen Burke was owned by a corporation, the Burke Packet Company. That corporation was dissolved in 1920, and the appellee became the sole owner of the steamer but continued to use the name Burke Packet Company. The oath made by appellee in 1922 to procure the registry of the vessel (46 USCA § 19) contained a statement that the Burke Packet Company, incorporated under the laws of Alabama, was the sole owner of the vessel. There was evidence indicating that appellee signed that statement without reading it and without realizing that it showed that the Burke Packet Company was then a corporation. The license of the vessel was renewed in subsequent years, including the year 1929, without any disclosure to registry officials of a change of ownership. The fact that the appellee stated under oath that a corporation was the sole owner of the vessel did not keep him from having a right to sue the wrongdoer for damages for injury to it inflicted after he individually became the sole owner of it. The validity of his title to the vessel was not

dependent upon the registry of it. Hozey v. Buchanan, 16 Pet. 215, 219, 10 L. Ed. 941. The register is not the sole or exclusive evidence of the ownership of the vessel. Lord v. Ferguson, 9 N. H. 380. Even if appellee was a mere bailee in possession when the vessel was wrongfully damaged he had a right to sue therefor. Montgomery Gas Light Co. v. Montgomery & Eufaula R. Co., 86 Ala. 372, 5 So. 735. The evidence showed no ground for giving to appellee's sworn statement as to the ownership of the vessel the effect of estopping him, in favor of the appellant, from claiming that he individually was the sole owner of it. There was nothing to indicate that appellant acted or changed its position in reliance on the truth of appellee's statement under oath that the vessel was owned by a corporation. The evidence did not show that anything had occurred which had the effect, as between the appellee and the appellant, of depriving the appellee of the rights to prove his sole individual ownership of the vessel, and of recovering from the appellant damages for injuries to the vessel resulting from wrongful conduct chargeable against the latter.

The Helen Burke was proceeding upstream about 8 o'clock in the morning of November 22, 1929, when its smokestack, right at the top of it, came into contact with appellant's wires, which, after colliding with the smokestack, slipped over its top and collided with the pilot house. Those wires extended from a cross-arm attached to two upright parallel poles located on the Selma side of the river and extended to a cross-arm attached to similar parallel poles located on the opposite side of the river. The wires collided with were those attached to the lowest of several cross-arms supporting wires extending across the river. The steamer arrived at Selma during the preceding evening or night, but, because of the darkness and high water, the captain concluded to tie up the vessel below the bridge and wait for daylight before attempting to go through to the landing customarily used by steamboats, which was above the bridge. At that time the river was at flood stage. On the day of the collision the height of the water, as shown by government records, was 49.8 feet. This was unusually high, but not as high as it had been eight times between 1902 and the date of the collision. On March 3, 1929, when the height of the water was 45.5 feet, the steamer went from below the bridge to the landing above it through the opening between the pier nearest the Selma side of the river and the next pier farther out in the river, the other open-

ing made by turning the draw being between the bank of the river on the Selma side and the first mentioned pier. Before doing so George Wolfe, who then was the captain of the steamer, notified the appellant that the steamer desired to go through, and, according to testimony introduced by the appellant, a representative of the appellant told him that he had plenty of room to go through. This statement was made after representatives of the appellant had taken measurements to ascertain the height of the wires above the water and had been informed that the top of the vessel's smokestack was 72 feet above the water. For the purpose of ascertaining the distance between the water and the wires above, the distance between the water and the top of the bridge was measured, and the measurer held up towards the wires a tree-measurer 18 feet long, which did reach the wires. Witnesses for the appellant who participated in making the measurements and who saw the steamer when she passed under the wires, stated that they estimated the clearance between the top of the smokestack and the wires to be between 6 and 8 feet. There was no evidence as to any representative of the appellee being informed of the just mentioned estimates. George Wolfe, who was the steamer's captain in March, 1929, and was employed on her when the collision occurred, testified to the effect that before the vessel, on either March 4th or 5th, made the return trip, he called the appellant's office over the telephone, told information what he wanted, and the man she gave him said: "Don't you worry, I had a man up there when you came up, and you have fifteen feet," and Wolfe said: "I just wanted to be positive about it, because I am going to drop through tonight, and didn't want any trouble." At the time of the collision the steamer was attempting to go from below the bridge to the landing above it through the same opening through which it went on March 3, 1929. Before making that attempt Pete Lanham, who then was captain of the vessel, asked Wolfe how much clearance he had when he went through under there in March, and Wolfe told him he had a 15-foot clearance. During the time between the freshet in March, 1929, and the freshet in November, 1929, the appellant installed four additional wires which were attached to cross-arms, each of which, one on the Selma side of the river and the others on the opposite side, was 2 feet below those which previously had been the lowest ones. Appellee's representatives in charge of the vessel were not informed or aware of the fact that the lower additional wires had been in-

stalled after the March freshet. Between March, 1929, and November, 1929, ornaments on the top of the steamer's smokestack, called "feathers," were removed, with the result of reducing the height of the smokestack at least 2 feet. There was evidence tending to prove that the height of the wires was additionally lessened between March, 1929, and the date of the collision by an increase in the sag of the wires, due in part to the sinking of one of the supporting posts on the Selma side of the river in consequence of the washing out of earth about the bottom of it. For many years prior to the collision the Helen Burke had been operating on the river, usually making weekly trips between Mobile and the landing above the bridge at Selma, sometimes going to points on the river above Selma.

Whether the presence of the wires over the river was or was not an unlawful obstruction of a navigable stream within the meaning of the statute (33 USCA § 403), the appellant, knowing the use of the river by passing vessels, by installing and maintaining the wires, incurred the duty of exercising reasonable care to provide such clearance as would enable vessels to pass under them with safety; and, by complying with a request of one in charge of a vessel desiring to pass under the wires for information as to their height, incurred a duty to give such information as was not likely, presently or in the future, to be harmfully misleading to those in whose behalf information was sought. The William J. Dailey (C. C. A.) 263 F. 78; F. S. Royster Guano Co. v. Outten (C. C. A.) 266 F. 484; Demopolis Telephone Co. v. Hood, 212 Ala. 216, 102 So. 35. At the time of the collision the top of the vessel's smokestack being at least 2 feet lower than it was in March, it is to be inferred that the collision of the newly installed wires with the smokestack right at its top would not have occurred but for the fact that those wires were at least 2 feet lower than those which were the lowest in March. This being so, the collision cannot fairly be attributed to the failure of those in charge of the vessel to be deterred from attempting to run the vessel under the wires by the fact that the river then was 4.3 feet higher than it was when the vessel went under the wires during the March freshet. Those in charge of the vessel at and immediately prior to the time of the collision, having no knowledge or notice of any change in the condition of the wires, of any lowering of them, after information in regard to them was sought and given in March, are not reasonably chargeable with negligence in concluding that the clearance between the wires

and the top of the smokestack after the height of it had been reduced at least 2 feet then was sufficient to permit a safe passage of the vessel under the wires, whether the information given in March was, as shown by testimony introduced by the appellant, that there was plenty of room to go through, or was, as shown by other testimony, that there was a clearance of 15 feet. We think the evidence warranted the conclusions that, in the circumstances disclosed, the appellant was chargeable with negligence in installing and maintaining the wires with which the vessel's smokestack collided without giving any notice or warning of the change of conditions to the appellee or those in charge of the operation of his vessel, who, in the absence of such notice or warning, were justified in acting in reliance on information previously given by the appellant as to the height of the wires above and the amount of clearance between them and the top of the vessel's smokestack; and that the injury complained of was proximately caused by that negligence.

For the appellant it was contended that those in charge of the operation of the vessel were negligent in failing to seek further information as to the height of the wires above the water before attempting the passage of the vessel under them, and in failing by observation to discover the insufficiency of the clearance before it was too late to avoid the collision, and that such negligence was a proximate cause of the collision and consequent injury. In the absence of any notice or information of a change in the condition of the wires after the time of the March freshet, those in charge of the operation of the vessel at the time of the collision are not fairly chargeable with negligence in relying and acting on information given by the appellant in March as to the amount of clearance between the top of the vessel's smokestack and the wires above. It is a matter of common knowledge that one located on a vessel a considerable distance below the top of its smokestack and overhead wires located forward of the vessel across its path without fault may be unable to estimate with any accuracy the relative heights above the water of the top of the smokestack and those wires. It appeared from the evidence that, by reason of heavy current due to flood conditions, after the vessel in attempting the passage under the wires got near enough for one on it to discover that the smokestack would or might collide with the wires, the vessel could not avoid the collision by halting or reversing, but had to maintain her headway and continue upstream. The evidence warranted the conclusion that those in charge of the vessel were not negligent in failing to discover the danger in time to avoid it. The William J. Dailey, supra; F. S. Royster Guano Co. v. Outten, supra. In our opinion the record does not justify the last mentioned contention.

We conclude that the decree appealed from was not erroneous. That decree is affirmed.