**Maxine E. McCALL, Mother of Thomas E. McCall, Jr. and Maxine E. McCall and John S. Mahle, Jr., Ancillary Administrator of the Estate of Thomas Edward McCall**

v.

**The SUSQUEHANNA ELECTRIC COMPANY.**

**Civ. A. No. 18106.**

United States District Court
D. Maryland.

Jan. 9, 1968.

Thomas G. Andrew, Rollins, Smalkin, Weston & Andrew, Baltimore, Md., for plaintiffs.

Phillips L. Goldsborough, III, and Herbert F. Murray, Baltimore, Md., for defendant.

NORTHROP, District Judge.

The question for determination raised by defendant's motion under Rule 12(d) of the Federal Rules of Civil Procedure is whether or not the facts alleged by the plaintiffs state a cause of action within the admiralty and maritime jurisdiction of this court.

The wife, minor son, and the ancillary administrator of the estate of Thomas E. McCall have filed suit pursuant to the Maryland Survival and Wrongful Death Statutes, Md. Code Article 67, § 1 and § 4, against the Susquehanna Electric Company for the pain and suffering and wrongful death by drowning of Thomas McCall.

The defendant operates Conowingo Dam on the Susquehanna River, a navigable river in Hartford County, Maryland. It is not disputed that on September 18, 1965, the decedent was fishing from a small boat anchored in the Susquehanna River about one-quarter of a mile below the dam. On that day the defendant, through its employees, allegedly caused the drowning of the decedent by opening certain gates in the dam, thus allowing a large quantity of water to flow downriver and thereby caused decedent's boat to capsize. It is contended that the gates were opened even though these employees knew that numerous persons were fishing in the river and were opened without an adequate warning being given to those on the water below the dam. The plaintiffs say that it was this combination of misfeasance and nonfeasance that caused the decedent's death.

The defendant denies that it was negligent and further alleges that decedent's death was caused by his being negligent or contributorily negligent, or that, in any event, decedent assumed the risk.

■ The plaintiffs allege that the case is cognizable under admiralty and maritime jurisdiction and have elected to proceed by an ordinary civil action, seasonably requesting a trial by jury. See generally Banks v. Hanover Steam-

ship Corporation, 43 F.R.D. 374 (D. Md. 1967). While the defendant does not question the diversity allegation in the amended complaint, plaintiffs' counsel has inadvertently used the word "residents" instead of "citizens" and this court will permit an amendment by interlineation at the time of trial.

■ If this case falls within the admiralty jurisdiction of the court then it is subject to the principles of the maritime law, Anthony v. International Paper Co., 289 F.2d 574 (4 Cir. 1961), Holley v. The Manfred Stansfield, 269 F.2d 317 (4 Cir. 1959) and cases cited therein, which provides for, among other things, the application of the doctrine of comparative negligence.

■ Generally, admiralty jurisdiction over torts depends upon the locality where the tort occurred. 1 Benedict, Admiralty § 127 (6th ed. 1940). The Supreme Court stated the test in Hough v. Western Transportation Co. (The Plymouth), 3 Wall. 20, 70 U.S. 20, 18 L.Ed. 125 (1866):

> "[T]he wrong and injury complained of must have been committed wholly upon the high seas of [sic] navigable waters, or, at least, the substance and consummation of the same must have taken place upon these waters to be within the admiralty jurisdiction." 3 Wall. at 35, 70 U.S. at 35, 18 L.Ed. at 128.

Defendant contends that Conowingo Dam was the site of the alleged cause of action, the water merely being the place where the injuries and the death of the decedent culminated. If that were true then there would not be admiralty jurisdiction in this case for

> "It has been uniformly held that the structures such as wharves, piers, etc., affixed permanently to shore and bed, are extensions of land, remedies for injuries upon which are restricted to those afforded by local rather than admiralty law." Johnson v. Traynor, 243 F.Supp. 184, at 187 (D.Md.1965).

■ In answering the question "Where did the tort occur?" the defend-

ant would have this court look only to the place where the defendant acts, the place where the negligent acts originate. It states that the case is without admiralty jurisdiction because "the alleged wrongful acts of the defendant are claimed to have been committed upon and adjacent to Conowingo Dam * * *." But in applying the "locality" test for admiralty jurisdiction over torts it is not the place where the negligent acts occur that is all important, but rather the place where the tort occurs.

 A tort is deemed to occur not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action. Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555 (D.Md.1965). Without an injury there is no cause of action, no tort, but only "*damnum absque injuria.*" Hough v. Western, supra, 3 Wall. at 36, 70 U.S. at 36.

It is of little significance that the acts complained of had a land-based origin. Hough v. Western, supra; Smith v. Lampe, 64 F.2d 201 (6th Cir. 1933), cert. denied, 289 U.S. 751, 53 S.Ct. 695, 77 L.Ed. 1496 (1933). Thus in Southern Bell Telephone & Telegraph Co. v. Burke, 62 F.2d 1015 (5th Cir. 1933) the court held that a claim for injuries to a boat when its smokestack was caught in telephone company wires strung across the river was within admiralty jurisdiction and said:

> "The wrong and injuries complained of having been wholly consummated while the steamer was traveling in the navigable waters of the United States, the claim based thereon is within the admiralty jurisdiction. * * * We are of the opinion that there is no merit in the suggestion to the effect that the asserted claim was kept from being cognizable in admiralty by the circumstance that the thing with which the steamer collided was connected solely with upland beyond the shore or border of the river, no part of it being in or covered by navigable waters. * * *" at 1016. Accord,

Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3 Cir. 1963); Upper Lakes Shipping v. International Longshoremen's Ass'n, 33 F.R.D. 348 (S.D. N.Y.1963); Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954).

As pointed out above, the parties agree that the decedent was on the Susquehanna River, below the dam, when the alleged negligence of the defendant, i. e., the releasing of the impounded water without warning, became operative on him. The tort alleged in the complaint occurred on navigable waters and consequently is a maritime tort.