Charles A. CHAPMAN, Libelant-Appellant,

v.

CITY OF GROSSE POINTE FARMS, a Michigan Municipal Corporation, Respondent-Appellee.

No. 17381.

United States Court of Appeals Sixth Circuit.

Nov. 20, 1967.

Charles C. Cheatham, Detroit, Mich. (Markle & Markle, Detroit, Mich., on the brief), for appellant.

Robert E. Fox, Detroit, Mich., for appellee.

Before WEICK, Chief Judge, PECK, Circuit Judge, and CECIL, Senior Circuit Judge.

JOHN W. PECK, Circuit Judge.

Libelant-appellant brought suit in admiralty against the City of Grosse Pointe Farms, a municipal corporation of Michigan, for injuries sustained when appellant dove from the side of a pier on Lake St. Clair into approximately 18 inches of water. The pier from which appellant dove was part of recreational facilities owned and operated by the City, and there were diving boards located near the end of said pier. The negligence alleged was the City's failure to erect barriers along the pier to prevent diving therefrom and the failure to adequately warn of the shallow water along the side of the pier. The District Court sustained respondent's exceptions to the libel and dismissed the action on the ground that it could not be maintained under admiralty jurisdiction as alleged.

Section 1333 of Title 28, U.S.C., provides that district courts shall have original jurisdiction of "any civil case of admiralty or maritime jurisdiction." Under this section it is the generally stated rule that admiralty tort jurisdiction depends not upon the nature of the tort, but upon the locality where it occurred; torts occurring upon navigable waters are within admiralty jurisdiction, and those occurring on land are without. The initial question presented here is thus whether the alleged tort occurred on the pier (in legal concept an extension of land), where the breach of duty, if any, occurred, or whether the situs of the tort was upon navigable waters, where the injuries were sustained.

Where the asserted negligence and resulting injuries both occur upon navigable waters, the cause is clearly within admiralty jurisdiction. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Also, it has been stated that where the injury occurs upon navigable waters, the cause is maritime and thus within admiralty jurisdiction. See The Admiral Peoples, 295 U.S. 649, 651, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); The Plymouth, 70 U.S. (3 Wall.) 20, 18 L.Ed. 125 (1865); Gilmore & Black, Admiralty, 283, 284 (1957). Indeed, this latter principle was the basis for upholding the substantive provisions of the Longshore-

men's and Harbor Worker's Act (33 U.S.C.A. §§ 901 et seq.)[1] in Crowell v. Benson, 285 U.S. 22, 39, 52 S.Ct. 285, 287, 76 L.Ed. 598 (1932): "As the [Longshoremen's] act relates solely to injuries occurring upon the navigable waters of the United States, it deals with the maritime law, applicable to matters that fall within the admiralty and maritime jurisdiction * * *." See also Interlake Steamship Co. v. Nielsen, 338 F.2d 879, 883 (6th Cir. 1964). Further, as noted in Wilson v. Transocean Airlines, 121 F.Supp. 85, 92 (N.D.Cal.1954), a wrongful death action arising from a plane crash into the ocean:

"In applying the 'locality' test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action. * * * [T]his case is analogous to those cases in which persons or property are precipitated from the land into the sea as the result of a wrongful act or omission. In such cases if there is no impact upon the person or property before they strike the water, it is recognized that the tort occurs upon the water within the admiralty jurisdiction." (Footnotes omitted.)

See Fireman's Fund Ins. Co. v. City of Monterey, 6 F.2d 893 (N.D.Cal.1925); Upper Lakes Shipping Ltd. v. International Longshoremen's Ass'n., 33 F.R.D. 348 (S.D.N.Y.1963); Hess v. United States, 259 F.2d 285 (9th Cir. 1958), rev'd on other grounds, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960); Weinstein v. Eastern Airlines, Inc., 316 F.2d 758, 765 (3rd Cir. 1963). And, as stated by this court in Smith v. Lampe, 64 F.2d 201, 202 (6th Cir. 1933), "where the negligent act originates on land and the damage occurs on water, the cause of action is within the admiralty jurisdiction."

However, a number of troublesome borderline cases have arisen: where claimant sustained injuries on the dock after falling from a defective gangway of a ship[2]; where claimant was on a vessel, when struck by a swinging hoist and precipitated upon the wharf[3]; where claimant was standing on a stage resting upon the wharf when struck by a sling and knocked into the water where he was later found dead[4]; where claimant was allegedly caused to fall from a negligently maintained dock into a slip where he was subsequently found drowned[5]; and where claimant fell through a hole in an extension of a pier, sustaining injuries only after striking the water[6]. Without attemping to distinguish and reconcile each of the above cases, it appears that the governing principle common to all is that reference should properly be made to the locality where "the substance and consummation of the occurrence which gave rise to the cause of action took place * * *." Minnie v. Port Huron Terminal Co., supra, note 3, 295 U.S. at 649, 55 S.Ct. at 885, or, as suggested in Thomson v. Chesapeake Yacht Club, Inc., supra, note 5 at 558, "to the place where the negligent act or omission *becomes operative or effective* upon the plaintiff * * *." In these cases, it is apparent that application of the mechanical place of the injury or impact test is impossible, for a claimant has usually suffered some injurious impact upon both land and water. Moreover, the jurisdictional standard suggested in these borderline cases is consistent with the result

1. Under the Longshoremen's Act compensation is payable irrespective of fault. 33 U.S.C. § 904(b). A fortiori, coverage under the act does not depend upon the locality of the "tort," but rather, upon locality of the injury.

2. The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935).

3. Minnie v. Port Huron Terminal Co., 295 U.S. 647, 55 S.Ct. 884, 79 L.Ed. 1631 (1935).

4. Smith & Son v. Taylor, 276 U.S. 179, 48 S.Ct. 228, 72 L.Ed. 520 (1928).

5. Wiper v. Great Lakes Engineering Works, 340 F.2d 727 (6th Cir. 1965).

6. Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555 (D.C.Md.1965).

reached in most other cases, since the "substance and consummation" of a tort will generally take place where the injury is sustained.

In cases such as *The Admiral Peoples* and *Wiper,* cited above (footnotes 2 and 4), the negligent act or force responsible for the injury resulted in a direct impact upon plaintiff, while the alleged negligence in the instant case was the failure to restrain appellant by means of warning signs or physical barriers from performing a voluntary act. This distinction might as first seem inconsequential, but it must be noted that where a negligent act or force knocks a person down or causes him to fall, whether he comes down on land or water is largely fortuitous. That, however is not the case here. Appellant alleges in the libel that during the period of time immediately preceding the ill-fated dive, he was engaged in recreational activities in the water; the focal point of these activities was the water and not the dock. And, appellant suffered no damage or injury of any kind prior to striking the water, at which moment the tort was completed. In short, the "substance and consummation" of the alleged tort here did not occur upon the dock, and this case is therefore governed by the authorities which hold that a tort is deemed to occur at the place where injury is sustained, regardless of the place of origin of the negligent act.

 The second question presented on appeal is whether locality of the tort alone is sufficient to confer admiralty jurisdiction upon the district court. In light of the fact that the purpose of the constitutional provision (U.S.Const. art. III, § 2) underlying section 1333 was to achieve uniformity in the area of maritime commerce (See Romero v. International Terminal Operating Co., 358 U.S. 354, 373, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959); Chelentis v. Luckenbach S.S. Co., 247 U.S. 372, 381–382, 38 S.Ct. 501, 62 L.Ed. 1171 (1918); Southern Pac. Co. v. Jensen, 244 U.S. 205, 215, 37 S.Ct. 524, 61 L.Ed. 1086 (1917); The Lottawanna, 88 U.S. 558, 575, 22 L.Ed. 654 (1874)),

doubt might well exist as to whether locality alone should be the sole controlling factor in determining the existence of federal admiralty jurisdiction. See 1 Benedict, American Admiralty 351 (6th ed. 1940). In McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961), where a bather was injured in the navigable waters off shore a public beach as a result of the alleged negligence of the proprietor, the court held that admiralty jurisdiction did not exist. Said the court:

"That a tort may have occurred on navigable waters is merely a prima facie test of admiralty jurisdiction. * * * Not every tort committed on admiralty waters may be redressed in the admiralty courts. Only those which have a maritime character, which deal with the maritime subject matter, are properly within admiralty jurisdiction. Admiralty jurisdiction originates from the early customs of the sea which were adopted in principle as law by commercial peoples. Admiralty was the result of commerce on the high seas; the commerce made possible by sailing vessels. Just as vessels were the source of admiralty, they remain the focal point of admiralty jurisdiction." Id. at 870–871.

The Supreme Court in Atlantic Transp. Co. of West Virginia v. Imbrovek, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208 (1914), while declining to decide whether a tort must, in addition to satisfying the locality requirement, be of a maritime nature, stated (pp. 61, 62, p. 735 of 34 S.Ct.):

"Even if it be assumed that the requirement as to locality in tort cases, while indispensable, is not necessarily exclusive, still in the present case the wrong which was the subject of the suit was, we think, of a maritime nature, and hence the district court, from any point of view, had jurisdiction.

\* \* \* \* \* \*

"If more is required than the locality of the wrong in order to give the court jurisdiction, the relation of the wrong to maritime service, to navigation,

and to commerce on navigable waters, was quite sufficient."

It appears that the above statements by the Court in *Imbrovek* would be equally appropriate with reference to the vast majority of tort cases in which admiralty jurisdiction had been sustained under the generally recognized rule. See Davis v. City of Jacksonville Beach, Florida, 251 F.Supp. 327, 328 (M.D.Fla.1965). To the extent this observation is accurate, it might be said that some relationship between the alleged wrong and maritime service, navigation or commerce on navigable waters, is a condition *sub silentio* to admiralty jurisdiction. Indeed, in Weinstein v. Eastern Airlines, Inc., 316 F.2d 758 (3rd Cir. 1963), a wrongful death case arising from a plane crash into Boston Harbor, the court was able to reconcile *McGuire,* supra, with its conclusion that locality of the injury was the exclusive determinant of admiralty jurisdiction (p. 763, n. 13):

> "The result reached in McGuire v. City of New York, 192 F.Supp. 866 (S.D. N.Y.1961) may well be compatible with the 'locality alone' test. To say that a person bathing in the shallow, and probably un-navigable in fact, waters of a public beach is within the locus of admiralty jurisdiction would be to distort the meaning of the locality test beyond what reason and policy would suggest or require."

In making this concession, it appears that *Weinstein* does in fact accept the "locality plus" test, notwithstanding the declaration as to the propriety of the "locality alone" criterion. In addition, the court also noted that aircraft had become "a major instrument of travel and commerce over and across" navigable waters, and that the dangers of plane crashes into navigable waters "are much the same as those arising out of the sinking of a ship or a collision between two vessels." Id. at 763.

While the locality alone test should properly be used to exclude from admiralty courts those cases in which the tort giving rise to the lawsuit occurred on land rather than on some navigable body of water, it is here determined that jurisdiction may not be based solely on the locality criterion. A relationship must exist between the wrong and some maritime service, navigation or commerce on navigable waters. Absent such a relationship, admiralty jurisdiction would depend entirely upon the fact that a tort occurred on navigable waters; a fact which in and of itself, in light of the historical justification for federal admiralty jurisdiction, is quite immaterial to any meaningful invocation of the jurisdiction of admiralty courts. See Black, Admiralty Jurisdiction: Critique and Suggestions, 50 Colum.L.Rev. 259, 264 (1950), cited in McGuire v. City of New York, supra, 192 F.Supp. at 870.

In accordance with the foregoing, we concur in the District Judge's conclusion that "to hold this cause of action to be within admiralty jurisdiction would do violence to the concepts of admiralty jurisdiction when viewed as a totality." The Judgment of the District Court dismissing the libel is therefore affirmed.