O'CONNOR & COMPANY, Inc., and
O'Connor Terminal Company,
Inc., Libelant,

v.

CITY OF PASCAGOULA, MISSISSIPPI,
a Municipality, Respondent.

Admiralty No. 3612.

United States District Court
S. D. Mississippi, S. D.

Sept. 11, 1969.

Upton Sisson, Bidwell Adam, Gulfport, Miss., Hayden Rector, Michael J. Salmon, Mobile, Ala., for plaintiffs.

Kenneth B. Robertson, E. S. Nelson, Pascagoula, Miss., for defendant.

## MEMORANDUM OPINION ON MOTION TO DISMISS

NIXON, District Judge.

In short, Libelant filed its Complaint against the Respondent City of Pascagoula, alleging that the latter, through its fire marshal, came to the job site and docks leased by Libelant for purposes of transporting by vessel explosives for several manufacturers to ships located in the Mississippi Sound for transportation to foreign ports, and under cover of law prevented Libelant and its representatives from continuing to load the explosives aboard ship on the ground that a permit had not been obtained from the Respondent and that this activity violated the Fire Prevention Code of the City.

Suit was brought in the Chancery Court of Jackson County, Mississippi by Libelant against the Respondent to enjoin interference with the Libelant's operation in connection with its business of shipping explosives. A temporary injunction was issued, and upon a hearing on the answer and motion to dissolve filed by the Respondent, the Court made the injunction permanent. The Respondent then appealed to the Mississippi Supreme Court which affirmed on the ground that the Respondent failed to meet its burden of proof in connection with its affirmative defense to the Bill for injunction and on the Motion to Dissolve inasmuch as it relied on its Fire Prevention Code which it averred in general terms was violated by Libelant but failed to introduce the Code into evidence at that hearing.

Libelant was engaged as shipping agent and stevedore for several shippers of explosives of Classes A, B, C and D according to the Interstate Commerce Commission Rules and Regulations. These explosives were shipped into the City of Pascagoula in trailers over the highways. The shipments were licensed and regulated by the Interstate Commerce Commission. At the terminal maintained by Libelant on the west bank of the east branch of the Pascagoula River in Jackson County, Mississippi these trailers were loaded on a barge by authority of a permit issued by the Jackson County Port Authority, and under the supervision of the United States Coast Guard. The barges were then towed down the ship channel through the City of Pascagoula to a point near Petit Bois Island in the Gulf of Mexico, a place designated by the United States Corps of Engineers, where the trailers were opened for the first time and the explosives removed and placed aboard an ocean-going ship for shipment to foreign ports, all of which was done under the supervision of the United States Coast Guard.

Libelant filed its Complaint herein against the City of Pascagoula, Respondent, for damages in the amount of $1,500,000 together with interest and costs, alleging that the action of the Respondent through its fire marshal was illegal and induced the manufacturers of the explosives with whom Libelant had a contract for transportation as aforementioned, to break the contract entered into between these companies and Libelant, interfered with and completely prevented Libelant and the other parties from performing their contractual obligations, and by Amendment to its Complaint, further alleged that by reason of the illegal interference with the operation of Libelant, the Respondent, under the guise of municipal authority, caused "the vessel at anchorage to sail light and late."

The sole basis for jurisdiction of this matter in this Court is the averment that the above action on the part of Respondent constituted a maritime tort thereby conferring admiralty jurisdiction on this Court which would otherwise be lacking because of the absence of diversity of citizenship between plaintiff, O'Connor Terminal Company, Inc., a Mississippi corporation, and the Respondent Municipal Corporation, the City of Pascagoula, Mississippi.

Section 1333 of Title 28, U.S.C., provides that District Courts shall have original jurisdiction of any

civil case of admiralty or maritime jurisdiction. It has been held that under this section it is the generally stated rule that admiralty tort jurisdiction depends not upon the nature of the tort, but upon the locality where it occurred; torts occurring upon navigable waters are within admiralty jurisdiction, and those occurring on land are without. Chapman v. City of Grosse Point Farms, 385 F.2d 962 (6th Cir. 1967). Thus, where the asserted negligence and resulting injuries both occur upon navigable waters, the cause is clearly within admiralty jurisdiction. Kermarec v. Compagnie Generale Transatlantique, 358 U.S. 625, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959); Ragland v. Norfolk & Washington Steamboat Company, 163 F. 376 (E.D.Va.1908). However, in applying the "locality" test for admiralty jurisdiction, the tort is deemed to occur, not where the wrongful act or omission has its inception, but where the impact of the act or omission produces such injury as to give rise to a cause of action; that is, the governing principle common to these cases is that reference should properly be made to the locality where the substance and consummation of the occurrence which gave rise to the cause of action took place, or stated another way, to the place where the act or omission becomes operative or effective upon the plaintiff. Thus, as noted in Chapman v. City of Grosse Point Farms, *supra*, 385 F.2d at page 964, it is apparent that application of the mechanical place of the injury or impact test is impossible, for in many cases the Claimants have usually suffered from injurious impact upon both land and water.

■ However, in *Chapman*, the Court went on to state that in light of the fact that the purpose of the constitutional provision underlying section 1333 was to achieve uniformity in the area of maritime commerce, doubt might well exist as to whether locality alone should be the sole controlling factor in determining the existence of Federal Admiralty Jurisdiction (citing 1 Benedict, American Admiralty, 351 6th Ed.

1940). Therefore, consonant with the trend of case law, and the impact of the Admiralty Extension Act, all of which pointed in the direction of expanding the boundaries of admiralty jurisdiction toward land (see Thomson v. Chesapeake Yacht Club, Inc., 255 F.Supp. 555, 556, U.S.D.C. Maryland 1965), the more accurate test, which has developed is the "locality plus" test rather than the "locality alone" criteria. The locality plus test requires as a prerequisite to admiralty jurisdiction, that some relationship exist between the alleged wrong and maritime service, navigation or commerce on navigable waters, which is a condition sub silentio to admiralty jurisdiction. Chapman v. City of Grosse Point Farms, *supra*.

■ In determining this Motion to Dismiss, the allegations of the Complaint, as amended, must be accepted as true. Thus, it must be considered that the activities of the Respondent wrongfully interfered with the Plaintiff's handling of the explosive cargoes, the shipping of same by barge down the navigable Pascagoula River into the Gulf of Mexico, and the transfer therefrom onto ocean-going vessels on navigable waters, thus causing the vessels to sail light and late.

■ In the case of Upper Lakes Shipping, Ltd. v. International Longshoremen's Association, et al., 33 F.R.D. 348 (U.S.D.C.S.D.N.Y.1963), the Court held that the assertion that activities of Defendant unions wrongfully interfered with the Plaintiff's shipping business, including handling of cargoes and free operation of ships on navigable waters, conferred admiralty jurisdiction on the United States District Court, even though the tortious act may have taken place on land alongside Plaintiff's vessels. The United States District Court for the Southern District of New York also held that a Libelant's contention that General Motors prevented Libelant's freight forwarder from shipping certain dump trucks which were the subjects of an afreightment contract, causing Libelant's vessels to sail light, amounted to an

inducement of a breach of a maritime contract causing light sailing which constitutes a maritime tort and which is cognizable in admiralty under Title 28 U.S.C. sec. 1333. Orient Mid-East Lines, Inc. v. Albert E. Bowen, Inc., 255 F.Supp. 627 (U.S.D.C.S.D.N.Y.1966).

 Therefore, in the instant case, although the situs of the alleged actions of the Defendant through its fire marshal, which allegedly interfered with Libelant's operation, took place at or near the dock or pier in Pascagoula, Mississippi, which is considered an extension of the land, Thomson v. Chesapeake Yacht Club, Inc., D.C., 255 F.Supp. 555, 558, nevertheless, said act allegedly interfered with and caused the breach by the explosive manufacturers of the maritime contract between Libelant and said manufacturers which had reference to maritime service or maritime transactions. In United States v. Standard Oil Company of California, 156 F.2d 312, 314–315 (9th Cir., 1946), the Court stated:

"The fact that the breach of a maritime contract proximately causes damage ashore does not place the liability for damages beyond the jurisdiction of an admiralty court.

"* * * that the contract being maritime, the admiralty will proceed to inquire into all its breaches, and all the damages suffered thereby, however peculiar they may be, and whatever issues they may involve."

Therefore, the question before this Court is whether the Libel, as amended, alleges such a maritime contract or maritime status between the parties as to bring this case within the admiralty and maritime jurisdiction. This Court is of the opinion that the Libel, as amended, does allege a maritime tort conferring admiralty jurisdiction upon this Court for two reasons, either of which would suffice, namely: (1) the impact of the alleged interference prevented the loading and transportation of the explosives by vessel upon navigable waters, and thus the act at least in part

became operative or effective thereupon; (2) it alleges an interference with a maritime contract entered into between the Libelant and the manufacturers of the explosives for the transportation of said explosives by vessel upon navigable waters. Thus, this Court is of the opinion that it has admiralty jurisdiction of this alleged maritime tort, and the Motion of the Respondent to Dismiss for lack of jurisdiction will be overruled.

An Order accordingly may be presented to this Court by the Libelant in the manner and within the time prescribed by the rules of this Court.