Lenore H. **RUBIN** et al., Plaintiffs,

v.

**POWER AUTHORITY OF the STATE OF NEW YORK,** Defendant.

Marilynn **FUNK**, as Executor of the Last Will and Testament of David Funk, Deceased, Plaintiff,

v.

**POWER AUTHORITY OF the STATE OF NEW YORK,** Defendant.

Civ. Nos. 1972–321, 1972–322.

United States District Court, W. D. New York.

March 28, 1973.

---

Brock, Brock & Zisser, Buffalo, N. Y. (Douglas H. Brock, Harrison, Gruber & Gaughan, and Fenton F. Harrison, Buffalo, N. Y., of counsel), for plaintiffs.

Phelps, Gray, Mansour & Hewitt, Niagara Falls, N. Y. (Joseph J. Mansour, Niagara Falls, N. Y., of counsel), for defendant.

CURTIN, District Judge.

In these actions the plaintiffs seek recovery for damages allegedly caused by the maritime torts of the defendant. The complaints allege the following facts. On June 27, 1971 Irving Rubin and David Funk, for whom the plaintiffs are executors, proceeded in a power boat upon the navigable waters of the Niagara River to the area of the water intakes of the generating plant operated by the defendant. There, with proper gear and equipment, they undertook a diving operation in the river. Their purposes were relaxation and a possible salvage operation. While so engaged, they were drawn into the water intakes and drowned. The complaints charge the defendant with negligence in failing to mark the area of the water intakes on the shores of the river, in failing to erect barriers to prevent users of the river from being drawn into the intakes, in failing to place warnings of the intakes on the shores of the river, in failing to place buoys or markers warning of the intakes on the waters of the river, in improperly and without warning causing a large amount of water to be drawn into the intakes, in interfering with the normal flow of waters of the river and in failing to inspect its premises for dangerous conditions. The complaints claim also that the various acts of negligence constituted a nuisance and danger to users of the river.

The defendant has moved to dismiss the complaints on the ground that this court lacks jurisdiction of the subject matter.

The parties agree that the only possible source of jurisdiction of this court in these actions lies in 28 U.S.C. § 1333 (1), which provides that the federal district courts shall have exclusive original jurisdiction of civil cases of admiralty or maritime jurisdiction. Guidance in determining whether a case is one of admiralty or maritime jurisdiction is given by the recent case of Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), a case arising out of the crash into the navigable waters of Lake Erie of a jet aircraft shortly after takeoff from a Cleveland airport. The Court there held that the mere fact an alleged wrong occurs over navigable waters is not of itself sufficient to turn an aircraft negligence case into a maritime tort and that claims arising from an airplane accident are not cognizable under 28 U.S.C. § 1333(1) unless "the wrong bear[s] a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504. While *Executive Jet Aviation* involved an airplane accident, the Court indicated that use of

the so-called locality test to invoke admiralty jurisdiction "seems almost absurd" in other cases. The Court noted as an example one where "a swimmer at a public beach is injured by another swimmer or by a submerged object on the bottom" and cited with approval Chapman v. City of Grosse Pointe Farms, 385 F.2d 962, 966 (6th Cir. 1967), and McGuire v. City of New York, 192 F.Supp. 866, 871–872 (S.D. N.Y.1961). 409 U.S. at 256 and n. 6, 93 S.Ct. at 498. The Court's comments lead to the conclusion that in the instant cases satisfaction of the locality test is insufficient to sustain admiralty jurisdiction, and that it must also be shown that the tortious acts alleged in the complaints bear "a significant relationship to traditional maritime activity."

■ In *Executive Jet Aviation,* the Court described maritime activity as follows:

The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules —rules that govern the manner and direction those vessels may rightly move upon the waters. When a collision occurs or a ship founders at sea, the law of admiralty tooks to those rules to determine fault, liability, and all other questions that may arise from such a catastrophe. Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows the nature of maintenance and cure. It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, car-

go damage, and claims for salvage. 409 U.S. at 269, 93 S.Ct. at 505.

In short, the term "maritime activity" comprehends only those activities, such as maritime service, navigation and commerce, which provided the historical justification for federal admiralty jurisdiction.

■ Applying the foregoing definition of maritime activity, the court concludes that the maritime nexus required to justify admiralty jurisdiction is lacking in the instant cases. Like the acts complained of in Gowdy v. United States, 412 F.2d 525 (6th Cir.), cert. denied, 396 U.S. 960, 90 S.Ct. 437, 24 L.Ed.2d 425 (1969) (failure to maintain guard rails on roof of maintenance building at lighthouse resulted in fall); Chapman v. City of Grosse Pointe, *supra* (failure to erect barriers along pier caused injury to person diving therefrom); and McGuire v. City of New York, *supra* (failure to remove submerged object resulted in injury to swimmer), the tortious acts alleged in the complaints did not arise out of, or otherwise bear any connection to, maritime activity despite their maritime locality.[1]

The plaintiffs cite in particular the case of McCall v. Susquehanna Electric Co., 278 F.Supp. 209 (D.Md.1968), as authority for their contention that this court has admiralty jurisdiction of the instant cases. In *McCall,* the alleged negligent release of water held behind a dam caused the decedent's boat down river to capsize. Although somewhat analogous to the instant cases, *McCall* applied only the locality test in determining jurisdiction. Because it is doubtful whether the factual situation in *McCall* meets the maritime nexus of *Executive Jet Aviation,* the case is not controlling precedent.

1. Regardless of whether the tortious acts alleged in the following cases would meet the maritime nexus requirement of *Executive Jet Aviation* for admiralty jurisdiction, at least they arguably arose out of the operation of vessels. Green v. Ross, 338 F.Supp. 365 (S.D.Fla.1972) (skin-diver run over by speedboat); Davis v. City of Jacksonville Beach, Florida, 251 F.Supp. 327 (N.D.Fla.1965) (swimmer struck by surfboard); King v. Testerman, 214 F.Supp. 335 (E.D.Tenn.1963) (water skier towed behind boat injured by negligence of operator of boat).

On the basis of the foregoing, the court concludes that the instant actions are not cognizable under 28 U.S.C. § 1333(1). The defendant's motion to dismiss the complaints for lack of subject-matter jurisdiction is therefore granted.

So ordered.