**Michael T. ONLEY, Appellant,**

**v.**

**SOUTH CAROLINA ELECTRIC & GAS COMPANY, a corporation, Appellee.**

**No. 73–1354.**

United States Court of Appeals, Fourth Circuit.

Submitted Nov. 2, 1973.

Decided Dec. 7, 1973.

A. Arthur Rosenblum, Charleston, S. C., Kermit S. King, and Donald W. Tyler, Columbia, S. C., on brief, for appellant.

Harold W. Jacobs, E. G. Menzie, Columbia, S. C., and J. C. Hare, Charleston, S. C., on brief, for appellee.

Before RUSSELL, FIELD and WIDENER, Circuit Judges.

PER CURIAM:

This is an appeal from an order of the district court dismissing appellant's libel for lack of admiralty jurisdiction. Appellant was injured when he struck a submerged boat ramp after diving from a dock in Lake Murray, South Carolina. The district court found Lake Murray to be navigable waters. The water level of the lake, which covered the extension of the boat ramp, was controlled by appellee in connection with the generation of electricity. Appellant contends that his injuries were caused by appellee's failure to properly regulate the water level and to warn and protect against the dangerous condition presented by the submerged boat ramp. The district court held that appellant did not allege a claim cognizable under federal admiralty jurisdiction. We affirm.

This court has previously considered the question of whether admiralty jurisdiction exists where injury is sustained by striking the underwater portion of a boat ramp. In Hastings v. Mann, 340 F.2d 910 (4th Cir. 1965), we found no admiralty jurisdiction present where the libelant, after entering the water, had slipped on the boat ramp in an attempt to launch his boat. The basis of our holding in Hastings v. Mann, *supra*, was that the boat ramp was an extension of the land and therefore, under the locality test, was beyond the jurisdiction of admiralty.

The locality test of admiralty jurisdiction, however, was strongly criticized by the Supreme Court in Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972). In the context of an airplane crash in navigable waters, the Supreme Court held that as a necessary condition to admiralty jurisdiction the tort must "bear a significant relationship to traditional maritime activity." *Id.* at 268, 93 S.Ct. at 504.

Whatever the role of the locality test in determining admiralty jurisdiction after *Executive Jet Aviation*, the Supreme Court clearly restricted such jurisdiction by adding the requirement of a nexus to traditional maritime activity. The appellant in the instant case fails to satisfy this requirement.[1] The case of a

---

[1]. While the Supreme Court has applied the maritime nexus test only in the case of an airplane crash it is clearly not limited to that situation. The Supreme Court's rationale with respect to the inadequacy of the locality test, the history and function of admiralty jurisdiction and federal-state comity, applies even more strongly to swimming and diving accidents than to airplane crashes.

The court in *Executive Jet Aviation* illustrated the absurdity of the locality test by using the example of a swimmer injured by a submerged object. *Id.* at 255, 93 S.Ct.

493. The court also cited with apparent approval two cases which applied a maritime nexus test to diving and swimming accidents. Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967); McGuire v. City of New York, 192 F.Supp. 866 (S.D.N.Y.1961).

The cases decided since *Executive Jet Aviation* also suggest that the maritime nexus test is not limited to airline crashes. See Kelly v. Smith, 485 F.2d 520 (5th Cir., 1973); Rubin v. Power Authority of New York, 356 F.Supp. 1169 (W.D.N.Y.1973);

swimmer striking a submerged object was cited as an example of how the strict locality test would lead to the "absurd" result of requiring admiralty jurisdiction. *Id.* at 255, 93 S.Ct. 493. The court in *Executive Jet Aviation* also cited with apparent approval Chapman v. City of Grosse Pointe Farms, 385 F.2d 962 (6th Cir. 1967), which denied admiralty jurisdiction specifically on the grounds that there was no maritime nexus in a diving accident. In the *Chapman* case, like the present one, the diver was injured after jumping off a pier into the shallow waters of a lake.

Appellant seeks to distinguish *Chapman* and assert a maritime nexus by alleging that appellee's negligence lay in its failure to properly control the water level of the lake. Appellant cites McCall v. Susquehanna Electric Co., 278 F.Supp. 209 (D.C.Md.1968), where the district court sustained admiralty jurisdiction where injury was caused by changing water levels. In *McCall* the Electric Company had opened the gates of a dam, releasing large amounts of water and resulting in the drowning of the occupant of a small boat downstream.

*McCall,* however, was decided prior to *Executive Jet Aviation* and applied only the locality test in determining jurisdiction. On a nearly identical fact situation the district court of Montana in Adams v. Montana Power Co., 354 F.

Supp. 1111 (D.C.Mont.1973), held that there was no maritime nexus as required by *Executive Jet Aviation,* and dismissed for want of jurisdiction. In Rubin v. Power Authority, 356 F.Supp. 1169 (W.D.N.Y. 1973), two skin divers were drowned when a hydroelectric generating plant diverted the normal flow of the river by drawing in large quantities of water. The court found no maritime nexus and did not sustain admiralty jurisdiction.[2]

We hold that appellee's control of the water level of a lake for the purpose of generating electricity, which results in a diving accident, does not bear a sufficiently significant relationship to traditional maritime activity to create federal admiralty jurisdiction. While the control of the water level of a navigable waterway may, in some cases, have an intimate relationship with maritime activities, there is no such maritime connection where a diving accident is the only consequence. The uniform body of rules and the expertise of admiralty are irrelevant to the issues in a diving accident. Conversely, the state tort law is most directly concerned with such accidents, and is quite capable of resolving the present controversy without any effect on the federal interest in maritime activities.[3]

Motion for summary affirmance is granted.

Adams v. Montana Power Co., 354 F.Supp. 1111 (D.C.Mont.1973). See generally Crosson v. Vance, 484 F.2d 840 (4th Cir., 1973.)

2. The court in Rubin v. Power Auth., *supra,* 356 F.Supp. at 1171, expressed doubt as to whether McCall v. Susquehanna Electric Co., *supra,* would meet the maritime nexus test of *Executive Jet Aviation,* and refused to consider the case as controlling precedent. Appellant's assertion that the act of controlling the water level produces the necessary maritime nexus is weaker than the similar assertion in *McCall, Adams* or *Rubin.* The present case does not, as in *McCall* and

*Adams,* involve the interference with boats on the river (a more traditional maritime concern than diving) nor the act of changing the water level (and arguably its navigability) the instrumentality of the injury. In the present case a lowered water level merely created a condition dangerous to divers. The same dangerous condition would exist regardless of whether the waters were navigable.

3. *Cf.* Crosson v. Vance, *supra,* 484 F.2d at 841. See generally Executive Jet Aviation v. Cleveland, *supra,* 409 U.S. at 272–273, 93 S.Ct. 493.