Preston O. KING, Plaintiff,

v.

The PRESIDENT RIVERBOAT
CASINO–MISSISSIPPI,
INC., Defendant.

Civ. A. No. 1:94cv233GR.

United States District Court,
S.D. Mississippi,
Southern Division.

March 9, 1995.

Benjamin C. Toledano, Ben C. Toledano, Atty., Pass Christian, MS, C. Arlen Braud, II, The Tilton Law Firm, Mandeville, LA, for plaintiff.

James O. Dukes, William Briggs Hopson, III, Bryant, Clark, Dukes, Blakeslee, Ramsay & Hammond, Gulfport, MS, for defendant.

## MEMORANDUM OPINION

GEX, District Judge.

This cause comes before the Court on the motion of defendant, the President Riverboat Casino–Mississippi, Inc. [President], to dismiss the complaint filed by plaintiff Preston O. King for lack of subject matter jurisdiction. After due consideration of the evidence of record, the briefs of counsel, the applicable law and otherwise being fully advised in the premises, the Court finds as follows.

### Standard of Review

Because the Court considers material outside the pleading, the Court treats President's motion as one for summary judgment pursuant to Federal Rule of Civil Procedure 56. *See* FED.R.CIV.P. 12(b); *see, e.g., Burns–Toole v. Byrne,* 11 F.3d 1270, 1273–75 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct.

12, 129 L.Ed.2d 912 (1994). Summary judgment is designed "to secure the just, speedy, and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (citation and internal quotation omitted); *see Berry v. Armstrong Rubber Co.,* 780 F.Supp. 1097, 1099 (S.D.Miss.1991), *affirmed,* 989 F.2d 822 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994).

A grant of summary judgment is appropriate when, viewed in the light most favorable to the nonmoving party "... the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Stated differently, summary judgment must be entered against a non-moving party if that party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

### Statement of Facts

King seeks damages against President under General Maritime Law, complaining that, on May 17, 1993, he was a "passenger" on the President Riverboat Casino and sustained injuries as a proximate cause of the unseaworthiness of the "vessel," which he contends was a result, in part, of the incompetence of its "crew" and the defendant's failure to provide the "vessel" with "proper engines, gear, and other appurtenances." *See* Complaint, ¶¶ II–V, VIII–X. The parties agree that the outcome determinative issue is whether the President Casino is, in fact, a "vessel" for purposes of invoking federal admiralty and maritime jurisdiction.

### Legal Analysis

In order to raise his civil claim to the level of a maritime tort sufficient to invoke federal

admiralty jurisdiction, King must demonstrate that (1) the wrong producing his injury occurred over navigable waters, and (2) that the activity proximately causing his injury was substantially related to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990).

### I. The Locality Test

The first prong is known as the *locality* test. There is no dispute that the injury occurred over navigable waters. In *Executive Jet Aviation, Inc. v. City of Cleveland*, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972), the Supreme Court rejected the locality test as the sole basis for invoking admiralty jurisdiction. *See id.* at 261, 93 S.Ct. at 501. The modification of the locality test resulted in part when applications of the rule produced an absurd result. *Id.* at 255–56, 93 S.Ct. at 498. One situation was when admiralty jurisdiction applied under a strict reading of the locality rule when it was not otherwise warranted, such as in the case of injured swimmers or water skiers. *Id.* at 256–58, 93 S.Ct. at 498–500. Another controversy arose with regard to artificial island drilling rigs, which, although located over navigable waters, often had "no more connection with the ordinary stuff of admiralty than do accidents on piers." *Id.* at 259, 93 S.Ct. at 500 (citation and internal quotation omitted).[1]

### II. Substantially Related to Maritime Activity

■ In an effort to cure the anomalies created by strict application of the locality rule, it became evident that "there must be some relationship between the tort and traditional maritime activities . . ." *See Executive Jet Aviation*, 409 U.S. at 256, 93 S.Ct. at 498.[2] In *Sisson*, the Supreme Court reiterated the following:

> The fundamental interest giving rise to maritime jurisdiction is the protection of maritime commerce, and we have said that that interest cannot be fully vindicated unless all operators of vessels on navigable waters are subject to uniform rules of conduct. The need for uniform rules of maritime conduct and liability is not limited to navigation, but extends at least to any other activities traditionally undertaken by vessels, commercial or noncommercial.

*Sisson*, 497 U.S. at 367, 110 S.Ct. at 2898 (internal citation and quotation omitted). The language specifying "traditional activities undertaken by vessels" assumes as a necessary predicate an analysis defining "vessels." Indeed, without such an analysis, the Court is left only with an accident in a casino occurring over navigational waters, which alone cannot provide federal jurisdiction.

Vessels are defined as follows:

> First, Congress defines the term "vessel," for the purpose of determining the scope of various shipping and transportation laws, to include all types of waterborne vessels, without regard to whether they engage in commercial activity. *See, e.g.*, 1 U.S.C. § 3 ("'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water"). Second, the

---

1. The opposite anomaly, not applicable here, occurred when application of the locality rule prevented admiralty jurisdiction when it was otherwise proper, such as when the tortious acts occurred near, but not over, navigable waters and related to loading and transportation of goods over navigable waters. *See, e.g., O'Connor & Co. v. City of Pascagoula*, 304 F.Supp. 681 (S.D.Miss. 1969) (applying "locality plus" test; decided before *Executive Jet Aviation* ).

2. In *Executive Jet Aviation*, an airline crashed in navigable waters, but was found not to trigger federal admiralty jurisdiction. After noting the flaws in a strict locality test, *see id.* at 256–68, 93 S.Ct. at 498–504, the Supreme Court held as follows:

> All these and other difficulties that can arise in attempting to apply the locality test of admiralty jurisdiction to aeronautical torts are, of course, attributable to the inherent nature of aircraft. Unlike waterborne vessels, they are not restricted by one-dimensional geographic and physical boundaries. For this elementary reason, we conclude that the mere fact that the alleged wrong "occurs" or "is located" on or over navigable waters—whatever that means in an aviation context—is not of itself sufficient to turn an airplane negligence case *into* a "maritime tort." It is far more consistent with the history and purpose of admiralty *to require also that the wrong bear a significant relationship to traditional maritime activity.*
>
> *Id.* at 268, 93 S.Ct. at 504 (emphasis added).

federal "Rules of the Road," designed for preventing collisions on navigable waters, *see, e.g.*, 94 Stat. 3415, 33 U.S.C. § 2001, *et seq.* (1976 ed., Supp.IV), apply to all vessels without regard to their commercial or noncommercial nature. Third, when it extended admiralty jurisdiction to injuries on land caused by ships on navigable waters, Congress directed that "[t]he admiralty and maritime jurisdiction of the United States shall extend to include all cases of damage or injury ... caused by a vessel on navigable water ..." Extension of Admiralty Jurisdiction Act, 62 Stat. 496, 46 U.S.C. § 740.

*Foremost Ins. Co. v. Richardson*, 457 U.S. 668, 676–77, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982) (footnotes omitted).[3] It is clear from the analysis in *Foremost* that the "capable of being used as a means of transportation" element is integral to the three definitional illustrations set forth therein. This element, so thoroughly discussed in *Ketzel v. Mississippi Riverboat Amusement, Ltd.*, 867 F.Supp. 1260, 1262–68 (S.D.Miss.1994), is germane to the instant inquiry.

The Court finds that *Hayford v. Doussony*, 32 F.2d 605 (5th Cir.1929), an admiralty jurisdiction case cited in *Ketzel*, 867 F.Supp. at 1266, provides a framework for the present inquiry. The structure in *Hayford*, a U.S. gunboat converted into "The Pirate Ship," was permanently moored to its dock as a floating dance and amusement facility. *See Hayford*, 32 F.2d at 605. The structure was moved only once when the Mississippi river was high. *Id.* The Fifth Circuit, reversing the trial court's ruling against the owner of The Pirate Ship, held as follows:

> The Pirate Ship was not used, or intended to be used, to carry freight or passengers from one place to another, and was not an instrument of navigation or commerce, and *performed no function that might not have been performed as well by a floating barge or platform permanently attached to the land.* A result of it not being a vessel or instrument of navigation or commerce engaged in any maritime venture was that a

*maritime lien did not attach* for the compensation for the services rendered by any of the libelants.

*Id.* (emphasis added).

In determining the status of the President Casino, the Court observes, as it did in *Ketzel*, that mere flotation is an insufficient basis to find that the casino is a vessel. *See* 867 F.Supp. at 1267 (citation omitted). Nor is the fact that the structure may be moved during inclement weather. *Id.* (citation omitted). Nor is it controlling that the structure possess or lack certain physical characteristics or attributes, including registration with the Coast Guard as a vessel, to reach a determination of vessel or nonvessel status under admiralty and maritime law. *See id.* at 1263–64, 1267. In essence, the Court finds that the factors set forth in *Ketzel*, that relate to the transportation function and primary purpose of the structure, are relevant, not only in determining vessel status, but also in determining on the facts of this case the ultimate issue whether the activity in question was substantially related to traditional maritime activity.

President attaches an affidavit, submitted by Gary D. Armentrout, which sets forth the following:

1. That he is Vice President of Gaming Development of the President Riverboat Casino–Mississippi, Inc. (hereinafter "Company") and that he has held said position since May 19, 1992, the inception of this Company;

2. That he is familiar with the purposes and intents of the Company;

3. That he is familiar with the Company's facility, President Casino, and more particularly its construction and present use;

4. That the President Casino was constructed and is used as a dockside casino;

5. That the President Casino is not intended to be used nor has it ever been used as a means of transporting passengers and/or cargo;

6. That the Company applied for a Mississippi gaming license with the intention

---

**3.** In *Foremost*, the Supreme Court removed any distinction between "pleasure boats" as opposed to "commercial boats" for purposes of invoking admiralty jurisdiction. *See id.* at 675–76, 102 S.Ct. at 2658–59.

and purpose of permanently mooring the President Casino at the Broadwater Beach Marina in Biloxi, Mississippi;

7. That the President Casino has no foreseeable plans to engage in navigation and that the only navigation which might occur would be in the event a hurricane approached the Mississippi Gulf Coast, and the President Casino would be temporarily moved to a safe location.

8. That any navigational or transportational capacity which the President Casino has is purely incidental to its primary purpose of entertaining gaming patrons.

■ In his Memorandum in Opposition to President's Motion to Dismiss, King seeks to refute Armentrout's attestation that the casino was not intended to be used, nor was it ever used, "for any type of vessel transportation." *See* Pl.'s Mem. in Opp. to Mot. to Dismiss, at 1. King's play on words seems to suggest that any movement of the casino over water transforms it magically into a vessel for purposes of the instant inquiry. However, such an argument would be frivolous. Use of a structure as a means of transporting passengers or cargo, rather than a means of transporting the vessel itself, lies at the core of the legal definition of a vessel. *See Foremost,* 457 U.S. at 676–77, 102 S.Ct. at 2659. In any event, King does not allege that the casino was *transporting* itself, its passengers, or any cargo at the time of his injury. That the casino is merely *capable* of serving as a means of transportation of passengers or cargo is not determinative of vessel status if it was not so used at the time of King's injury. *See Ketzel,* 867 F.Supp. at 1263, 1268.

King argues further that, because of certain representations inherent in President's "marine insurance policy," together with its registration with the Coast Guard, which requires periodic inspections and maintenance of vessel logs, the casino is a vessel as a matter of law pursuant to a "judicial admission," i.e., that President intended that its casino would be involved in maritime commerce and that President warranted the casi-

no's seaworthiness. Mem. in Opp. to Mot. to Dismiss, at 2–4. King further argues, *inter alia,* that President concedes vessel status because it has sought an exemption from *ad valorem* taxes under state law for its "converted vessel." These arguments, assuming they are relevant,[4] are similar to those asserted in *Ketzel,* 867 F.Supp. at 1268, and must fail.

■ The determination of vessel status for purposes of invoking federal jurisdiction will not be influenced by a state's legislatively induced licensing requirements or by its sundry provisions relating to taxation. To hold contrary would require federal courts to construe regulatory provisions that may well address concerns, as in the instant case, that are unduly attenuated from those addressed by Congress in providing a federal forum to redress wrongs under admiralty or maritime jurisdiction. Similarly, actions taken by Mississippi's casino establishments to comply with federal law, state law, or to reduce their exposures to liability under federal admiralty or maritime law do not have the effect of short-cutting the analytical framework for determining the instant jurisdictional question.

For reasons set forth above, the Court finds that the facts of this case are sufficiently analogous to those in *Hayford.* The defendants have demonstrated, and King has not refuted, that the casino serves no transportation function whatever. That it *could* be so used does not, in any event, change the result for purposes of the instant claim because the casino was not so used at the time of King's injury. As a related issue, moving the casino over navigable waters, as noted in *Ketzel,* would be serving a purpose merely *incidental* to its primary function as a gambling facility. *See* 867 F.Supp. at 1263–68. Accordingly, the Court finds that the President Casino is not a vessel for purposes of invoking federal admiralty and maritime jurisdiction. The analysis, however, is yet incomplete.

---

**4.** President contests the reliability of documents King submits to support his *ad-valorem* taxation argument. *See* Def.'s Reply Mem., at 3. The

Court's ruling herein does not require a resolution of this issue.

■ Although there will, of necessity, be some redundancy in the elements, the Court addresses the ultimate legal question: whether the activity that gave rise to the injury is substantially related to traditional maritime activity. The Court first observes that the policy of imposing uniform rules of conduct on *operators* of vessels on navigable waters, noted by the Supreme Court, is simply not implicated in King's case. *See Foremost*, 457 U.S. at 676, 102 S.Ct. at 2659. Additionally, although King downplays this factor, *see* Mem. in Opp., at 2, the Court finds that whether the primary function of the casino lies outside the realm of transportation, *see Ketzel*, 867 F.Supp. at 1263, is indeed relevant to whether the activity giving rise to King's injury was substantially related to traditional maritime activity. *See Foremost*, 457 U.S. at 676, 102 S.Ct. at 2659. The Court notes that the primary business in which the casino was engaged was, without dispute, "to house and entertain gaming patrons." *See* Pl.'s Mem. in Opp., at 2; Def.'s Ans. to Interrog. 4. Simply put, rather than an operator of a *"vessel,"* the defendants operated a dockside *casino.* Contrary to King's suggestion in his argument for "vessel" status, *see* Pl.'s Mem. in Opp., at 2, 4, that some remote secondary function involves some, but a significantly limited, transportation function is not sufficient to render the activity in the instant case substantially related to maritime activity. *See Sisson,* 497 U.S. at 364–67, 110 S.Ct. at 2896–98; *Foremost,* 457 U.S. at 676, 102 S.Ct. at 2659; *cf. Ketzel,* 867 F.Supp. at 1263 (primary-secondary analysis as applied to determination of vessel status).[5]

King's allegation that the President Casino is "unseaworthy" because it lacks "proper engines, gear, and other appurtenances," *see* Complaint, ¶ V, which erroneously assumes that the casino is a vessel, further supports, rather than undermines, a finding that the casino serves no transportation function whatever. Moreover, King's allegation lends some support to President's argument that the activity giving rise to King's injury was not substantially related to a traditional maritime activity. Additionally, because the casino serves no transportation function, the federal "Rules of the Road" are not implicated when reviewing the activities giving rise to King's injuries. *See Foremost,* 457 U.S. at 676, 102 S.Ct. at 2659. For reasons set forth above, the Court finds that the activity giving rise to King's injuries, which occurred, for all practical purposes, in a permanently docked casino during the course of its business, does not have a substantial relationship to traditional maritime activity.[6]

## Conclusion

As with the absurdities created by blind application of the locality rule, King's complaint is riddled with allegations of "passenger," "crew," and "unseaworthy," all legal fictions crafted in an attempt to seize federal maritime jurisdiction. The Court finds that the changing notion of "vessel" as defined by state law is simply not determinative of the instant jurisdictional controversy. This Court applies, as it must, federal law without regard to regional idiosyncrasies created by

---

5. In *Sisson,* the Supreme Court held that "docking a vessel at a marina on a navigable waterway is a common, if not indispensable, maritime activity." 497 U.S. at 367, 110 S.Ct. at 2898. The Supreme Court further noted, however, that, to be substantially related to traditional maritime activity, the docking of the vessel at the marina must have been an essential and integral part of taking "voyages" and moving "into and out of navigation." *Id.* In King's case, the casino is located at dockside only to satisfy the prerequisites for dockside gambling. The activity at issue presents no hazard to maritime commerce and is not substantially related to voyages or maritime activity. *See id.* at 362, 367, 110 S.Ct. at 2895, 2898.

6. In *Executive Jet Aviation,* the Supreme Court, *inter alia,* noted the following:

The law of admiralty has evolved over many centuries, designed and molded to handle problems of vessels relegated to ply the waterways of the world, beyond whose shores they cannot go. That law deals with navigational rules—rules that govern the manner and direction those vessels may rightly move upon the waters ... Through long experience, the law of the sea knows how to determine whether a particular ship is seaworthy, and it knows *the nature of maintenance and cure.* It is concerned with maritime liens, the general average, captures and prizes, limitation of liability, cargo damage, and claims for salvage. *See* 409 U.S. at 269–70, 93 S.Ct. at 505.

special interest groups or the state legislature. *See, e.g., Ketzel,* 867 F.Supp. at 1268.

For reasons set forth above, the Court finds that it lacks subject matter jurisdiction to address King's claim. Indeed, at every turn of the analysis, the Court must find that the President Casino is not a vessel and that the activity associated with King's injury was not sufficiently connected to any traditional maritime activity to invoke this Court's jurisdiction over admiralty and maritime matters. Because King cannot invoke federal jurisdiction by seeking a remedy as a "passenger" of a "vessel," he must resign himself to seeking a remedy, if any, as an aggrieved patron/invitee of the defendant's casino. Accordingly, President's motion to dismiss should be granted and King's lawsuit dismissed. A separate order shall issue.

### ORDER

This cause comes before the Court on the motion of defendant, the President Riverboat Casino—Mississippi, Inc., to dismiss the complaint filed by plaintiff, Preston O. King, for lack of subject matter jurisdiction. For reasons set forth in this Court's Memorandum Opinion, issued this date and incorporated herein by reference, this Court finds that it lacks jurisdiction over this cause. It is therefore,

ORDERED AND ADJUDGED that defendant's motion to dismiss be, and is hereby, granted. It is further,

ORDERED AND ADJUDGED that this cause be, and is hereby, dismissed for lack of subject matter jurisdiction. It is further,

ORDERED AND ADJUDGED that the Clerk shall dismiss any and all pending motions as moot. It is further,

ORDERED AND ADJUDGED that each party shall bear his/its respective costs.

SO ORDERED AND ADJUDGED.